IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2019

**MARIO CRUZ ESTRADA v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Lawrence County**
**No. 34773     Stella L. Hargrove, Judge**

_____

**No. M2019-00085-CCA-R3-PC**

_____

The Petitioner, Mario Cruz Estrada, appeals the Lawrence County Circuit Court's denial of his petition for post-conviction relief from his 2015 conviction for attempted second degree murder and his twelve-year sentence. The Petitioner contends that he received the ineffective assistance of trial counsel. Because the notice of appeal was untimely, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Mark Free, Columbia, Tennessee, for the appellant, Mario Cruz Estrada.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Christi Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's conviction relates to the January 1, 2014 stabbing of Charles Davis. On the day of the stabbing, the victim and Ms. Carranza engaged in a verbal argument about the Petitioner's drinking and driving with Ms. Carranza and her four-year-old daughter inside the Petitioner's car. The argument escalated into a physical altercation between the victim and Ms. Carranza, who began hitting the victim with her fists. The victim grabbed Ms. Carranza's arms and laid her on the ground in an effort to protect himself. According to the victim, the Petitioner approached stabbed him multiple times before fleeing the scene with Ms. Carranza. *See State v. Mario Cruz Estrada*, No. M2016-00056-CCA-R3-CD, 2016 WL 6996399, at *1-3 (Tenn. Crim. App. Nov. 30, 2016), *no perm. app. filed*.

On December 1, 2017, the Petitioner filed the instant petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel. The Petitioner asserted that counsel failed to conduct an adequate investigation and to present evidence showing the victim was the first aggressor.

At the post-conviction hearing, trial counsel testified that the physical altercation between Ms. Carranza and the victim occurred out of the Petitioner's view and that the first thing the Petitioner saw was Ms. Carranza on the floor with the victim lying on top of her. Counsel recalled that the Petitioner began assaulting the victim and that, ultimately, the victim was stabbed and the Petitioner and Ms. Carranza fled the scene.

Trial counsel testified that he began representing the Petitioner after the arraignment, that he did not file any pretrial motions, that he obtained the State's discovery materials and reviewed them with the Petitioner, and that he attempted to negotiate a plea agreement. Counsel recalled that the Petitioner had been released on bond at the time counsel was retained. Counsel said that he and the Petitioner had "some miscommunications or some phone calls" but that they discussed the State's initial and final plea offers before the guilty plea deadline.

Trial counsel testified that although the Petitioner had eight previous felony convictions, the offenses occurred within twenty-four hours and that, as a result, the Petitioner had one previous felony conviction for purposes of sentencing. Counsel did not recall the State's arguing that the Petitioner had more than one previous felony conviction and said the Petitioner was sentenced as a Range I offender. Counsel said, though, the previous conviction increased the length of the within-range sentence imposed by the trial court.

Trial counsel testified that he learned through the discovery materials that Ms. Carranza was not charged with the same offense as the Petitioner, although she and the Petitioner were both charged with conspiracy. Counsel said that he spoke to Ms. Carranza's attorney, not Ms. Carranza.

Counsel testified that, after the trial began, the prosecutor provided him with a recording of a jail telephone call between Ms. Carranza and the father of her children, during which Ms. Carranza stated that the victim had been choking "her out" and that the Petitioner came "to her defense." Counsel said that although Ms. Carranza was on the State's witness list, the prosecutor did not call her as a witness, and that counsel considered calling her as a defense witness. Counsel agreed that a courtroom discussion occurred about Ms. Carranza's reluctance to testified and about whether she would plead the "Fifth [Amendment] to everything or just selectively, which was not going to be allowed." Counsel said that although evidence showing that the victim had been choking Ms. Carranza when the

Petitioner struck the victim was beneficial to the defense, the recording and Ms. Carranza's written police statement contained "pretty damning evidence." Counsel recalled that Ms. Carranza's written statement showed that just before the Petitioner threw the knife out of the window, the Petitioner licked the blood off the knife and said, "I told you I would be stabbing somebody." Counsel said that if the recording were admitted into evidence, the written statement would have likewise been admitted and that he and the Petitioner discussed his concerns about the written statement. Counsel agreed he could have requested a continuance to investigate the recording and to consider the benefits and pitfalls of calling Ms. Carranza as a defense witness.

Trial counsel testified that his cross-examinations of the State's witnesses were fashioned to show the Petitioner acted in self-defense or in defense of others.

Trial counsel testified that he prepared for the Petitioner's trial by reviewing the discovery materials and discussing the materials with the Petitioner. Counsel said that the Petitioner's statements were consistent with the victim's and other witnesses' statements. Counsel said that he and the Petitioner discussed "technical things" relative to whether certain information would benefit the defense. Counsel recalled making his trial notebook, "lining everything up," speaking with the investigating officers, and attempting to learn if the State had additional witnesses in preparing for the trial. Counsel said that he did not investigate the crime scene, that photographs of the scene were included in the discovery materials, and that the proof established the Petitioner's and Ms. Davis's inability to see the initial altercation between the victim and Ms. Carranza. Counsel recalled that the defense and the State agreed upon the photographs admitted at the trial.

Trial counsel testified that the State extended a plea offer to Ms. Carranza that allowed her to plead guilty to a lesser offense in exchange for her testimony against the Petitioner. Counsel understood that Ms. Carranza would testify at the trial because she cooperated with the State, but counsel did not know the particulars of her potential plea agreement. Counsel knew only that a plea offer had been extended to her, that he thought the offer was later withdrawn, and that the prosecutor indicated he was not going to call her as a witness. Counsel said he did not know what Ms. Carranza might say or whether she would assert her Fifth Amendment privilege against self-incrimination. Counsel said that the defense had Ms. Carranza's previous statements, which included both beneficial and harmful evidence, and that if counsel presented only the beneficial portions of the statements, the State would have presented the harmful evidence. Counsel said that he was concerned the harmful evidence in the statements would have negated the beneficial evidence. Counsel said that at the time of this case, his practice did not include having a client sign a statement regarding the client's decision whether to testify. Counsel said, though, a *Momon* hearing was held in the Petitioner's case. Counsel recalled that the trial judge asked the Petitioner questions to show the Petitioner had decided not to testify.

-3-

Trial counsel testified that he thought the trial proof established the Petitioner acted in defense of Ms. Carranza because the Petitioner reacted to observing the victim, who was two feet taller than the Petitioner, on top of Ms. Carranza. Counsel recalled that the victim testified at the trial about his emotional state at the time of the incident and his frustration with the "entire situation." Counsel said that he and the Petitioner discussed the benefits and pitfalls of testifying and that the Petitioner would decide whether to testify after the State presented its case. Counsel said that if the Petitioner had testified, the Petitioner could have told the jury his version of the events, which was established by other witnesses. Counsel recalled that the Petitioner had eight previous convictions for aggravated assault and said that he and the Petitioner discussed the possibility of "opening the door" to those convictions if the Petitioner testified. Counsel said that he was unsure if the jury would have credited the Petitioner's testimony.

Trial counsel testified that he did not file any pretrial motions because he determined the evidence did not warrant any motions. Counsel recalled objecting to the admission of forensic evidence related to blood found on the Petitioner's clothes and said the issue was also raised in the previous appeal. Counsel said that, after this court denied relief in the previous appeal, he wrote the Petitioner a letter stating that he was not going to seek review from the supreme court, that the Petitioner had a limited time to file an application for permission to appeal, and that the Petitioner had various options to pursue further appellate review.

On cross-examination, trial counsel testified that he did not recall the number of times he met with the Petitioner but that they spoke by telephone multiple times. Counsel said he and the Petitioner had "adequate communication." Counsel said that he did not recall but thought that he attempted to contact witnesses and that he might have spoken to the victim's wife. He said that his normal practice was to contact witnesses and that he did not think he deviated from this practice.

Trial counsel testified that he received photographs and diagrams of the crime scene and that the evidence supported a theory that the Petitioner acted in defense of others. Counsel said that he and the Petitioner discussed the facts of the case from the Petitioner's perspective and that the Petitioner decided to proceed to trial with the chosen defense. Counsel said that he and the Petitioner discussed the events, the definition of attempted second degree murder, the witness statements, and what the defense needed to establish to show the Petitioner acted in defense of others.

Trial counsel testified that, initially, he thought Ms. Carranza was going to testify when he and the Petitioner discussed the benefits and pitfalls of the Petitioner's testifying but that the defense had to "shift gears" when counsel learned Ms. Carranza would not testify for

the State. Counsel said that he and the Petitioner discussed that counsel believed Ms. Carranza would not have testified favorably for the State and that, as a result, the prosecutor decided not to call her as a State's witness. Counsel said, though, that if Ms. Carranza testified as a favorable defense witness, the State could have questioned her about her previous statements, portions of which were unfavorable to the Petitioner. Counsel said that he and the Petitioner discussed these factors and that counsel made strategic decisions based upon his previous experience.

Trial counsel testified that he never advised a client whether the client should testify, although he would "lay it out" for the client and let the client decide. Counsel said that he would tell a client that the client's decision was against counsel's "better judgment" but that it was the client's right to testify. Counsel recalled discussing the case with the Petitioner and said he left the decision to the Petitioner, who said he did not want or need to testify.

On redirect examination, trial counsel testified that the trial court ordered consecutive service of the twelve-year sentence in this case with an effective six-year sentence in an unrelated case. Counsel said that he knew the State would seek consecutive service of these sentences and agreed that the parties and the trial judge discussed at the sentencing hearing whether consecutive service could be imposed. Counsel did not recall the details of the discussion but said that consecutive service was discretionary in this case and that he argued against it. Counsel said he did not represent the Petitioner in the unrelated case.

The Petitioner testified that trial counsel did not present enough evidence showing that he acted in defense of Ms. Carranza. The Petitioner said that he learned of the telephone recording involving Ms. Carranza during the trial and that he never reviewed her written statement. He said that he and counsel discussed whether to present Ms. Carranza as a defense witness but that portions of her testimony could have benefitted the State.

The Petitioner testified that trial counsel should have presented additional evidence about the layout of the crime scene to establish what the Petitioner saw and heard before he turned a corner inside the home to see the victim on top of and choking Ms. Carranza. The Petitioner said he should have testified but acknowledged that other witness testimony showed he initially could not see what had occurred between the victim and Ms. Carranza. The Petitioner said that he and Ms. Carranza spoke about one week after she was released from jail, that she thanked him for "helping her," and that she believed the victim would have hurt her more severely if the Petitioner had not intervened. The Petitioner did not recall if he told counsel about this conversation.

The Petitioner testified that he and trial counsel discussed during the trial whether the Petitioner should testify and that he did not recall discussing the matter before the trial. The Petitioner said that he ultimately decided not to testify because he did not want the jury to learn of his previous convictions.

The Petitioner testified that trial counsel did not present sufficient evidence showing that the victim had been emotional and had been the initial aggressor. The Petitioner said that if he had testified at the trial, the jury would have heard additional evidence of the victim's demeanor.

On cross-examination, the Petitioner testified that he wanted a new trial because the jury did not hear enough evidence about his defending Ms. Carranza from the victim. The Petitioner said that trial counsel called Ms. Carranza as a defense witness but said that she invoked her Fifth Amendment privilege against self-incrimination.

The Petitioner testified that, relative to his allegation that counsel failed to investigate adequately, he wanted counsel to investigate the layout of the crime scene based upon the witness statements. He said that although photographs of the scene were admitted as evidence, the photographs did not establish what he could and could not see from his initial location inside the home. He said that the defense received the telephone recording involving Ms. Carranza during the trial and that counsel did not investigate it adequately because the matter arose during the trial. The Petitioner agreed that he and counsel discussed how the recording could benefit and harm the defense but said that they did not "go through it thoroughly." The Petitioner stated that after learning of the recording, counsel could have requested a continuance in order to speak with Ms. Carranza and her attorney.

The Petitioner testified that he chose not to testify because trial counsel said the State "could" ask questions about his previous convictions. The Petitioner said he did not understand his decision. He recalled the trial judge asking questions about his decision not to testify but did not recall the substance of the questions. He said, "Looking back on it, I don't feel like I made the right decision. I feel like I wasn't capable of making that decision. I don't feel like I was advised enough to make that decision."

The post-conviction court denied relief. Regarding the allegation that trial counsel failed to investigate adequately, the court found that counsel requested and received discovery materials, which included witness statements, that counsel believed he spoke to the investigating officers consistent with his routine practice, that counsel concluded the witness statements did not contain discrepancies of importance, and that counsel and the Petitioner reviewed the witness statements. The court discredited the Petitioner's testimony that he did not recall reading the witness statements. The court determined that although counsel did not go to the crime scene, which was the victim's then-home, the evidence showed that the Petitioner was not in a position to observe what had occurred between the victim and Ms. Carranza before the Petitioner intervened. The court found, though, that the Petitioner heard the victim and Ms. Carranza from his location inside the home. The court determined that counsel and the Petitioner reviewed the photographs and agreed upon their accuracy. The

-6-

court determined that counsel did not provide ineffective assistance by failing to investigate adequately.

The post-conviction court determined that the Petitioner did not present proof at the hearing about his allegation that trial counsel provided ineffective assistance by improperly waiving objections and defenses.

Relative to the Petitioner's allegation that trial counsel provided ineffective assistance by failing to present sufficient evidence that the victim was the first aggressor, the post-conviction court determined that the undisputed facts reflected the victim and Ms. Carranza were engaged in an altercation in another room. The court found that during the trial, the State decided not to call Ms. Carranza as a witness and provided trial counsel with a recorded telephone call involving Ms. Carranza. The court found that although the Petitioner complained counsel did not attempt to present the recording as evidence, counsel and the Petitioner discussed that Ms. Carranza's statement included information detrimental to the defense, including that the Petitioner had licked blood from the knife used against the victim and that the Petitioner had stated, "I told you I'd be stabbing somebody," that counsel did not know what Ms. Carranza's testimony would be, and that Ms. Carranza had pending criminal charges against her. The court found that the Petitioner and counsel discussed the possible benefits and pitfalls of calling Ms. Carranza as a witness and that counsel decided it was better not to call her as a witness. The court determined that counsel's decision was strategic and was not deficient performance. The court determined that counsel was prepared for the trial, knew the strengths and weaknesses of the case, and made a sound strategic decision. The court noted that Ms. Carranza was not a witness at the post-conviction hearing and that the Petitioner had failed to show what her testimony would have been had counsel presented her at the trial.

Relative to the Petitioner's allegation that trial counsel did not advise him adequately in order for him to decide whether to testify at the trial, the post-conviction court discredited the Petitioner's testimony and determined the allegation was without merit.

Relative to the Petitioner's allegation that trial counsel failed to introduce evidence supporting jury instructions for self-defense and defense of others, the post-conviction court determined that counsel "was immediately concerned with raising these defenses" and that counsel raised the issues at the trial and in the previous appeal. The court determined that the allegation was without merit.

The post-conviction court, likewise, determined that the Petitioner failed to show that if trial counsel had requested a continuance after receiving the recorded telephone call involving Ms. Carranza, the outcome of the trial would have been different. This appeal followed.

The Petitioner contends that trial counsel provided ineffective assistance (1) by failing to investigate the crime scene "more thoroughly" in order to support the request for jury instructions on self-defense and defense of others, (2) by failing to investigate adequately and introduce as evidence Ms. Carranza's pretrial statements in order to support the request for jury instructions on self-defense and defense of others, and (3) by failing to advise the Petitioner properly about his decision to testify at the trial. The State responds that the post-conviction court did not err by denying relief.

As a preliminary matter, the State asserts that the appeal should be dismissed because the Petitioner failed to file a timely notice of appeal. Tennessee Rule of Appellate Procedure 4(a) states,

> In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the timely filing of such document may be waived in the interest of justice.

The post-conviction court's order denying relief was filed on December 7, 2018. The notice of appeal was filed with the appellate court clerk on January 11, 2019. This exceeds the thirty-day time frame in which to file a notice of appeal. The Petitioner's appellate brief did not address the untimeliness of the notice of appeal. The State's appellate brief, which stated that the notice of appeal was untimely, was filed on July 25, 2019, and the Petitioner did not submit a reply brief, file a motion, or otherwise respond to the State's request for a dismissal of the appeal. We conclude that the interests of justice do not warrant waiving the timely filing of the notice of appeal in this case. As a result, the appeal is dismissed.

Based upon the foregoing and the record as a whole, the appeal is dismissed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE